```
                    UNITED STATES DISTRICT COURT
                    CENTRAL DISTRICT OF ILLINOIS


MANUEL ALVAREZ, SR.,              )
                                  )
     Plaintiff,                   )
                                  )
-vs-                              )
                                  )
CITY OF DANVILLE, OFFICER T.      )
WASSON, badge number 347,         )   NO.  04-2162
individually and as employee      )
of the Police Department of      )
the City of Danville, and         )
OFFICER BLEW, individually        )
and as an employee of the         )
Police Department of the City    )
of Danville,                      )
                                  )
     Defendants.                  )
```

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Now come the Defendants, CITY OF DANVILLE, OFFICER TROY WASSON, and OFFICER JOSEPH BLEW by John F. Martin of Meachum & Martin, their attorney, and pursuant to Federal Rule of Civil Procedure 56 move the Court to enter summary judgment in favor of Defendants and against the Plaintiff and in support thereof state:

(a)
### Introduction

The Plaintiff claims the officer Defendants used excessive force in arresting him. The Complaint also alleges that the

1

City of Danville had a formal or informal policy which authorized the officers' conduct.

The arrest occurred in the early morning hours of September 13, 2003, when the officers were dispatched responding to a report that a fight was in progress. The Plaintiff and another man had drunk 12 beers each during the evening and were physically fighting.

On his arrival, Officer Wasson saw the Plaintiff strike the other man, Jeremy Fleming, over the head with a pipe or rod knocking him to the ground. The Plaintiff would not comply with the commands of Officers Wasson and Blew to go to the ground and the Plaintiff resisted arrest. Officer Wasson attempted to use a Taser, but it had no effect on the Plaintiff. The Plaintiff was near Officer Wasson and made a step toward him with clinched fists and Officer Wasson kicked him in the pelvic area knocking him to the ground. The Plaintiff still resisted arrest by holding his hands under his body. The officers eventually were able to get his arms free and handcuffed him. They noted he was highly intoxicated and had a severe laceration on the left side of his face which was bleeding. An ambulance was called and he was transported to a local hospital.

Defendants submit that the officers' conduct was reasonable and appropriate under the circumstances and that based on the doctrine of qualified immunity the case should be dismissed.

To the extent the Complaint attempts to set forth a state law claim of battery, the conduct of the officers did not constitute willful and wanton misconduct.

With reference to the city, there is no evidence that the city has a formal or informal policy of excessive force and that count should also be dismissed.

(b)
<u>Undisputed Material Facts</u>

1.  The Plaintiff, Manuel Alvarez, Sr., is 46 years old and lives in Danville, Illinois.  (Pl. Dep. p. 3)

2.  On the afternoon prior to the incident Jeremy Fleming showed up at the Plaintiff's house at approximately 6:00 p.m. (Pl. Dep. p. 14)

3.  Fleming had the impression the Plaintiff was his father, but it has never been proven.  (Pl. Dep. pgs. 5, 15)

4.  The Plaintiff and Fleming purchased a 12 pack of beer. (Pl. Dep. p. 16)

5.  After they drank that 12 pack they purchased another 12 pack of beer.  (Pl. Dep. p. 17)

6.  When they finished the second 12 pack they had each drunk 12 beers.  (Pl. Dep. pgs. 18, 20)

7.  When they finished the second 12 pack they were intoxicated.  (Pl. Dep. p. 20)

8.  Sometime in the evening Fleming's girlfriend, Tiffany Dill, showed up.  (Pl. Dep. p. 20)

9.  Sometime after midnight a dispute arose between the Plaintiff and Fleming.  (Pl. Dep. p. 21)

10. The Plaintiff does not remember what they were arguing about, but Fleming later told him they were arguing about a car. (Pl. Dep. pgs. 22, 26)

11. At some point the argument became physical and they were fighting in the driveway of the Plaintiff's house.  (Pl. Dep. pgs. 21, 26)

12. The Plaintiff can only remember standing over Fleming holding a piece of aluminum.  (Pl. Dep. p. 22)

13. The Plaintiff does not know how long the fight lasted, but remembers Fleming hit him with a beer bottle on the left side of the head cutting his face.  (Pl. Dep. pgs. 23, 24)

14. At the time of the fight both Plaintiff and Fleming were intoxicated. (Pl. Dep. pgs. 24-25)

15. At some point the police arrived.  (Pl. Dep. p. 27)

16. The police were telling the Plaintiff to get down, but he was not complying.  (Pl. Dep. p. 27; Wasson Dep. pgs. 13, 17; Blew Dep. p. 8)

17. The piece of metal in the Plaintiff's hand was two to three feet long and three inches wide.  (Pl. Dep. pgs. 28, 29; Wasson Dep. p. 15)

18. The Plaintiff heard some of the officers' commands, but did not comply with their commands. (Pl. Dep. p. 29; Wasson Dep. pgs. 13, 17; Blew Dep. p. 8)

19. One of the officers attempted to use a Taser on the Plaintiff. (Pl. Dep. p. 31; Wasson Dep. pgs. 17-18; Blew Dep. p. 8)

20. The Plaintiff was struck in the abdomen by one of the officers as he was being taken down. (Pl. Dep. p. 31; Wasson Dep. p. 23)

21. Officer Wasson was dispatched by the Danville Police Department to a fight in progress at approximately 1:20 a.m. (Wasson Dep. pgs. 7-8)

22. En route to the Plaintiff's address the dispatcher told Wasson that they were still fighting. (Wasson Dep. p. 8)

23. When Officer Wasson arrived he saw two men in the back yard fighting and a female standing nearby. (Wasson Dep. p. 10)

24. As he arrived he saw the Plaintiff with a large pipe or stick in his hand strike Jeremy Fleming in the head with the pipe and Fleming fell straight to the ground. (Wasson Dep. p. 10)

25. Officer Wasson exited his car and yelled at the Plaintiff at least twice to drop the pipe, but the Plaintiff did not. (Wasson Dep. p. 13; Blew Dep. p. 8)

5

26. Officer Wasson activated his Taser and fired it at the Plaintiff, but it had no effect. (Wasson Dep. pgs. 17-18; Blew Dep. p. 14)

27. Officer Wasson yelled at the Plaintiff to get down on the ground, but the Plaintiff did not comply. (Wasson Dep. p. 17)

28. Officer Blew was also hollering at Plaintiff to get on the ground. (Blew Dep. p. 15)

29. The Plaintiff dropped the pipe and Officer Wasson activated the Taser again, but it had no effect. (Wasson Dep. p. 18)

30. At some point Officer Blew arrived at the scene. (Wasson Dep. p. 20)

31. As Officer Wasson and Blew approached the Plaintiff the Plaintiff took a step towards Wasson with his fists clenched. (Wasson Dep. pgs. 22-23; Blew Dep. pgs. 9, 14)

32. At this point Officer Wasson kicked the Plaintiff in the pelvic area which pushed him backwards and he went to the ground. (Wasson Dep. p. 23; Blew Dep. p. 9)

33. Both officers struggled with the Plaintiff to force his arms out from under him where the Plaintiff was holding them to avoid being handcuffed. (Wasson Dep. p. 24; Blew Dep. pgs. 9, 19)

6

34. Once he was handcuffed and brought to his feet the officers noted that the Plaintiff was severely intoxicated and that he had a severe cut on the left side of his face which was bleeding. (Wasson Dep. pgs. 25-26; Blew Dep. pgs. 22-23)

35. The only forceful contact between the officers and the Plaintiff was when the Plaintiff was kicked once and when the officers forcefully pulled his arms out in order to handcuff him. (Blew Dep. pgs. 20-21)

(c)
Argument

I. QUALIFIED IMMUNITY BARS THE CLAIM AGAINST THE OFFICERS.

Summary Judgment Standard. Summary judgment is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. FRCP 56; Celotex Corp. v. Catrett, 477 U.S. 317, 106 S.C. 2548 (1986).

This standard of review applies to motions for summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.C. 2505 (1986). The nonmovant must show through specific evidence that a triable issue of fact remains on the issues on

7

which he bears the burden of proof at trial.  <u>Celotex</u> 477 U.S. at 324.

 <u>Qualified Immunity</u>. In the instant case the conduct of the officers in arresting the Plaintiff was reasonable under the facts and circumstances as known to the officers at the time of the arrest.  Consequently summary judgment should be entered in favor of the officers based on qualified immunity.

 In <u>Saucier v. Katz</u>, 533 U.S. 194, 121 S.C. 2151 (2001), the Supreme Court announced a two-part immunity inquiry when the defense of qualified immunity is raised.  The first is that taken in the light most favorable to the plaintiff, do the facts alleged show that an officer's conduct violated a constitutional right.  If no constitutional right was violated, then there is no necessity for further inquiry concerning qualified immunity. If a violation is established, then the next step is to ask whether the right was clearly established.  533 U.S. at 201.

 In <u>Saucier</u>, for example, the plaintiff was arrested while protesting a speech by Vice President Albert Gore at an Army base.  The Court held that under the Fourth Amendment standard of reasonableness that the conduct of the officer in arresting the plaintiff was appropriate.

 The <u>Saucier</u> Court also noted that where qualified immunity is raised, a ruling on that issue should be made early in the proceedings so that the cost and expenses of trial are avoided

8

where the defense is dispositive. Qualified immunity is an entitlement not to stand trial or face the other burdens of litigation and is an immunity from suit rather than a mere defense to liability and is effectively lost if the case is erroneously permitted to go to trial. 533 U.S. at 201, citing Hunter v. Bryant, 502 U.S. 224, 112 S.C. 534 (1991).

This standard was applied by the Seventh Circuit Court of Appeals in McNair v. Coffey in which the plaintiff alleged that while in the process of being arrested by a police officer there was an unreasonable show of force by additional squad cars and officers brandishing weapons. In applying the objective reasonableness standard the Court held that a jury could not find Officer Coffey behaved unreasonably.

In Brandon v. Village of Maywood, 157 F. Supp. 2d 917 (N.D. Ill. 2001), one of the plaintiff's claims was that the officers used unreasonable force in arresting him. The officers twice asked one of the complaining plaintiffs to get down on the ground, but he refused to comply after which they threw him to the ground. The Court noted that failure to comply with a verbal order can constitute resistance justifying the use of force necessary to overcome resistance, citing Mayer v. Skelly, 172 F.3d 53 (7th Cir. 1998) and Ryan v. County of DuPage, 45 F.3d 1090 (7th Cir. 1995). Brandon, 157 F.Supp.2d at 929.

In the present case the conduct of Officers Wasson and Blew in arresting the Plaintiff were completely reasonable. The officers had been dispatched because a fight was in progress and even en route to the scene were advised again that the fight was continuing.

Upon arrival at the house the officers witnessed the fight itself and observed the Plaintiff with a pipe or pole in his hands club Jeremy Fleming over the head knocking him to the ground. The Plaintiff testified that he does not remember many details of the fight partially because of his intoxication, but he did recall standing over Fleming holding the metal rod or pipe. At this time the officer had already personally witnessed the crimes of battery and aggravated battery.

Upon exiting the vehicle the Plaintiff resisted arrest in refusing to comply with the commands of the police officers and by struggling with them when they took him to the ground and attempted to handcuff him. In addition, Officer Wasson had already seen the Plaintiff club Fleming when the Plaintiff failed to comply with the officer's commands and the attempted use of the Taser did not have any effect on the Plaintiff. At the time Wasson made the one kick at the Plaintiff the Plaintiff was moving toward Wasson with clinched fists. Under these circumstances the actions of the police officers were entirely reasonable.

As the United States Supreme Court has said, the qualified immunity standard "gives ample room for mistaken judgment" by protecting "all but the plainly incompetent or those who knowingly violate the law." Hunter v. Bryant, 502 U.S. 224 (1991). In the present case there was not even any mistaken judgment nor incompetent actions, nor knowing violation of the law. Consequently the first test announced in Saucier requires that qualified immunity be applied and the case be dismissed as to the officers.

Additional authority from the Seventh Circuit Court of Appeals for dismissal of this case is Lawrence v. Kenosha County, 391 F.3d 837 (7th Cir. 2004) and Smith v. City of Chicago, 242 F.3d 737 (7th Cir. 2001). In Lawrence, the plaintiff was leaving a concert in his pickup truck and the defendant officer was directing traffic. The plaintiff told the officer not to touch his vehicle and swore at the officer. The officer felt the plaintiff might be under the influence of drugs or alcohol and asked for his driver's license, but the plaintiff refused and attempted to drive away. The officer opened the truck door and pulled the plaintiff from the vehicle by his arm.

The Court held that the officer's conduct was reasonable and he did not use excessive force in arresting the plaintiff. 391 F.3d at 843.

In Smith, the defendant officers believed the plaintiff had committed a traffic offense and when they tried to stop him he did not pull over for 12 blocks. When stopped he could not produce proof of valid insurance for his car. The Court held that the stop was reasonable.

The plaintiff also claimed the officers had used excessive force. When the plaintiff was ultimately stopped by the police cars the officers pulled the plaintiff from the car, pinned his arms to his back, slammed him against the hood of his car, and handcuffed him. The Court held that a reasonable officer could have thought Smith was trying to flee and that the officer's actions were objectively reasonable. 242 F.3d at 744.

These cases are analogous to the present situation where the officers' actions were also objectively reasonable and this case should be dismissed.

II.  THE STATE LAW BATTERY CLAIM SHOULD ALSO BE DISMISSED.

In the three count Complaint the first two counts are directed at the officers and allege they used excessive force. Although not entirely clear it may be that the Plaintiff is also attempting to allege a state law claim for battery. If so, summary judgment should also be entered on that claim.

With reference to this claim the officers are entitled to the provisions of the Illinois Governmental and Governmental Employees Tort Immunity Act ("Tort Immunity Act"). 745 ILCS Sec. 10/1-101 et seq.

The Illinois Criminal Code, for example, provides that a person commits battery if he intentionally or knowingly <u>without legal justification</u> and by any means causes bodily harm to an individual or makes physical contact of an insulting or provoking nature. 720 ILCS Sec. 5/12-3.

Police officers who are enforcing the law, however, are entitled to the protection of the Tort Immunity Act which provides that they can only be liable if they are guilty of willful and wanton misconduct. The relevant part of the Tort Immunity Act states as follows:

> A public employee is not liable for his act or omission in the execution or enforcement of any law unless such act or omission constitutes willful and wanton conduct.
>
> 745 ILCS Sec. 10/2-202

The relevant part of the statutory definition of willful and wanton conduct contained in the Tort Immunity Act is as follows:

> "Willful and wanton conduct" as used in this Act means a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious

13

>	disregard for the safety of others or their property."

>>	745 ILCS Sec. 10/1-210

Clearly the conduct of the officers in this case does not rise to the level of willful and wanton conduct.

The case is similar to Smith v. City of Chicago, 242 F.3d 737 (7th Cir. 2001), in which the plaintiff failed to stop his vehicle for 12 blocks after he was suspected of a traffic offense.

Besides entering summary judgment on the excessive force claim, the Seventh Circuit also affirmed the summary judgment ruling on the battery claim. 242 F.3d at 744. The Court held that under the circumstances which the officers faced, their actions in pulling the plaintiff out of his car, pinning his arms on his back, slamming him on the hood of the car, and handcuffing him "were all reasonable actions to take when arresting a potentially dangerous suspect." 242 F.3d at 744. The Court held that the evidence could not support a finding that the officers' actions were willful and wanton.

    III.   THERE IS NO EVIDENCE OF POLICY OR CUSTOM TO IMPLICATE THE CITY OF DANVILLE.

In Monell v. New York Department of Social Services, 436 U.S. 658 (1978) the Court held that before there could be

municipal liability, it must be shown that a policy statement, ordinance, regulation or decision officially adopted and promulgated by a municipality was the cause of the alleged constitutional violation by one of its employees. Recovery against a municipality is limited to acts that it has officially sanctioned or ordered. McNabola v. Chicago Transit Authority, 10 F.3d 501 (7th Cir. 1993).

The Seventh Circuit has noted that a Section 1983 municipal liability can be established in one of three ways. The first is through a law or regulation reduced to writing which when enforced, results in a constitutional violation. The second is through a widespread practice so well settled that it constitutes customer usage with the force of law. The third is where the constitutional violation was caused by the action of a person with final policy making authority. Baxter v. Vigo County School Corp., 26 F.3d 728 (7th Cir. 1994).

In the present case there is no evidence that any of these elements have been proven. At the outset it is clear that no constitutional violation occurred. Beyond that there is no evidence that any conduct of the Defendant officers violated the Plaintiff's constitutional rights and was authorized by a formal or informal municipal policy of the city as alleged in the Complaint.

15

Consequently the claim against the city should also be dismissed.

### (d)
### Conclusion

The Defendants Officer Troy Wasson, Officer Joseph Blew, and the City of Danville request that summary judgment be entered in favor of the Defendants and against the Plaintiff on the Complaint.

> s/ John F. Martin
> Attorney for Defendants
> Meachum & Martin
> 110 N. Vermilion
> Danville, IL  61832
> Telephone:  (217)442-1390
> Fax:  (217)442-2042
> E-mail:  jfmartin2@aol.com

**CERTIFICATE OF SERVICE**

I hereby certify that on August 26, 2005, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:  George Ripplinger and Jamie Bas, and I hereby certify that I have mailed by United States Postal Service the document to the following non CM/ECF participant:  George Ripplinger, Jamie Bas, George Ripplinger and Associates, 2215 West Main Street, Belleville, IL  62223.

> s/ John F. Martin
> Attorney for Defendants
> Meachum & Martin
> 110 N. Vermilion
> Danville, IL  61832
> Telephone:  (217)442-1390
> Fax:  (217)442-2042
> E-mail:  jfmartin2@aol.com