UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Urbana Division

| | |
|---|---|
| MANUEL ALVAREZ, SR., | ) |
| Plaintiff, | ) |
| vs. | ) CASE NO. 04-2162 |
| CITY OF DANVILLE, OFFICER TROY WASSON, badge number 347, individually and as an employee of the Police Department of the City of Danville, and JOSEPH BLEW, individually and as an employee of the Police Department of the City of Danville, | ) |
| Defendants. | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**

Comes now Plaintiff, Manuel Alvarez, by his attorneys, George Ripplinger and Associates, and in response to Defendants' Motion for Summary Judgment, states:

**(a) INTRODUCTION**

Plaintiff, Manuel Alvarez, brought this suit against Officer Troy Wasson and Officer Joseph Blew because they used excessive force in seizing Manuel Alvarez and committed a battery to his person.

On September 13, 2003, Manuel Alvarez and Jeremy Fleming got into an altercation. During the altercation, Jeremy Fleming hit Manuel Alvarez over the head with a beer bottle and cut Manuel Alvarez's face. Tiffany Dill, Jeremy's girlfriend, called the Danville Police Department to report the fight and Officer Troy Wasson and Officer Joseph Blew arrived at the scene. When the officers arrived, they saw Manuel Alvarez standing over Jeremy Fleming

1

holding a piece of aluminum. At this point, Troy Wasson began to taser Manuel Alvarez repeatedly. Manuel Alvarez dropped the piece of aluminum, however, because he was "frozen" from being tasered, he did not respond to the officers' commands to get on the ground. As a result, Officer Wasson kicked Manuel Alvarez in the abdomen as opposed to using lesser means of force to take him to the ground. At no time, did Manuel Alvarez say anything defiant to the officers. He did not try to strike them. He did not threaten their safety or the safety of others.

Officer Troy Wasson and Officer Joseph Blew used excessive force in seizing Manuel Alvarez and their actions were unreasonable. They are not entitled to qualified immunity because it was clearly established on September 13, 2003 that there were lesser means of force that could have been used in order to seize Manuel Alvarez. Defendants also committed the intentional tort, battery; therefore, they are not entitled to immunity pursuant to the Tort Immunity Act because their actions meet the willful and wanton exception.

### (b) RESPONSE TO UNDISPUTED MATERIAL FACTS

#### (b)(1)  Undisputed Material Facts

Plaintiff concedes the undisputed material facts stated in Defendants' Motion in paragraphs:  one; two; four; five; six; seven; eight; nine; eleven; thirteen; fourteen; fifteen; sixteen; seventeen; eighteen; twenty; twenty-one; twenty-two; twenty-seven; twenty-eight; thirty; and thirty-two.

#### (b)(2)  Disputed Material Facts

Plaintiff specifically denies paragraph (12) in Defendants' Facts for the reason stated in their paragraph (13). Manuel Alvarez remembered standing over Jeremy Fleming with a piece of aluminum and that Jeremy had hit him over the head with a beer bottle. (Defendants' Facts, p.4).

Plaintiff specifically denies paragraph (19) in Defendants' Facts because in Defendants'

paragraph (26) Officer Wasson testified that he activated the Taser on Manuel Alvarez. (Defendants' Facts, p. 6).

Plaintiff specifically denies paragraph (23) in Defendants' Facts because Manuel Alvarez did not testify that he and Jeremy were fighting when Officer Wasson arrived. He only testified that he was standing over Jeremy at the time Officer Wasson arrived. Furthermore, Manuel Alvarez testified that he did not remember striking Jeremy over the head. (Pl. Dep. as Exhibit "A", p. 27-28).

Plaintiff specifically denies paragraph (24) in Defendants' Facts because Manuel Alvarez testified that he did not remember striking Jeremy over the head. (Exhibit "A", p. 27-28). He also testified that he was not holding a pipe, but a piece of aluminum from a kick plate of an aluminum door. (Exhibit "A", p. 28).

Plaintiff specifically denies paragraph (25) in Defendants' Facts because Officer Blew testified that Officer Wasson had already deployed the taser by the time he arrived; therefore, he could not have witnessed whether Wasson told Manuel Alvarez to drop the aluminum before he deployed the Taser. (Blew Dep. as Exhibit "B", p. 8).

Plaintiff specifically denies paragraph (26) in Defendants' Facts because Manuel Alvarez testified that he felt the shock from the taser and it affected him. (Exhibit "A", p.30-31).

Plaintiff specifically denies paragraph (29) in Defendants' Facts because Manuel Alvarez testified that the taser shocked him. (Exhibit "A", p. 30-31).

Plaintiff specifically denies paragraph (31) in Defendants' Facts because Officer Wasson did not testify that the Plaintiff had his fists clenched. (Wasson Dep. as Exhibit "C", p. 22-23). Officer Blew testified that Manuel Alvarez's hands were in fist, but they were down at his side. (Exhibit "B", p. 14-15).

Plaintiff specifically denies paragraph (33) in Defendants' Facts because Defendants did not state that they knew Manuel Alvarez was trying to avoid being handcuffed. It is reasonable to assume that he was lying on his hands because he was in pain from being kicked. (Defendants' Facts, p. 6).

Plaintiff specifically denies paragraph (34) in Defendants' Facts because Officer Wasson knew that Manuel Alvarez was intoxicated. (Exhibit "C", p. 27-28).

Plaintiff specifically denies paragraph (35) in Defendants' Facts because Officer Wasson also tasered Manuel Alvarez on multiple occasions. (Exhibit "C", p. 14, 18).

### (b)(3)  Immaterial Facts

Paragraph number (3) states that Fleming had the impression the Plaintiff was his father, but it has never been proven. Whether Fleming and Manuel Alvarez were family members, friends, or complete strangers is not relevant to the issue of whether Officer Wasson use of force was excessive.

Paragraph number (10) states that the Plaintiff does not remember what they were arguing about, but Fleming later told him they were arguing about a car. The issue in this case is whether the officer used reasonable force in seizing Manuel Alvarez. The topic of the disagreement between Manuel Alvarez and Jeremy Fleming is irrelevant.

### (b)(4) Additional Material Facts

(1)   Manuel Alvarez did not say anything to the officers before he was kicked. (Exhibit "B", p. 15-18).

(2)   Manuel Alvarez did not make any threatening body movements toward the officers before he was kicked. (Exhibit "B", p.15-18).

(3)   Manuel Alvarez was not holding the piece of aluminum when he was kicked. (Exhibit

"A", p. 30-31, Exhibit "C", p. 17, Exhibit "B", p.40).

(4)     Manuel Alvarez did not drop to the ground at the Officers' requests because he was frozen from being tasered and intoxicated. (Alvarez Affidavit as Exhibit "D").

(5)     Officer Blew and Officer Wasson knew from their training that if a person was tasered then he or she may appear "frozen" as if the taser had no effect on them when it did. (Exhibit "B", p. 36-37, Exhibit "C", p. 61).

(6)     Officer Blew could not tell if Manuel Alvarez understood their commands to get on the ground. (Exhibit "B", p. 15).

(7)     Officer Blew and Sergeant Jane McFadden testified that if you have to kick someone then you want to aim for their bones or the peroneal nerve in their leg in order to diminish the injury. Officers should not try to kick someone in a soft-tissue area, the head, or groin area. (Exhibit "B", p. 43, McFadden Dep. as Exhibit "E", p. 24).

(8)     Officer Wasson aimed to kick Manuel Alvarez in a soft-tissue area. (Exhibit "C", p. 29).

(9)     Officer Wasson did not write in his police report that he kicked Manuel Alvarez. (Exhibit "C", p. 72).

(10)    Manuel Alvarez was not charged with resisting arrest, obstruction of justice, battery or any other offense. (Exhibit "C", p. 76).

(11)    Jeremy Fleming was taken to the police station and booked for battery, but Manuel Alvarez was not booked for any offense. (Exhibit "C", p. 41-42).

(12)    The only physical action Manuel Alvarez took after he was tasered, and before Officer Wasson kicked him, was one step forward. (Exhibit "C", p. 85).

(13)    Manuel Alvarez suffered a ruptured bladder as a result of the officer's kick. (Dr. Ochoa Dep. as Exhibit "F", p. 10, 15).

(c)  ARGUMENT

I.  **OFFICER WASSON AND OFFICER BLEW ARE NOT ENTITLED TO QUALIFIED IMMUNITY.**

Defendants' Motion for Summary Judgment should be denied because there is a jury question as to whether the officers used excessive force in seizing Manuel Alvarez in violation of the Fourth Amendment.  Summary judgment is warranted when the evidence, when viewed in a light most favorable to the non-moving party presents "no genuine issue as to any material fact" such that the moving party is entitled to a judgment as a matter of law."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In applying the standard, all disputed issues of fact are to be resolved in favor of the non-moving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  Viewing the facts most favorable to Manuel Alvarez, this Honorable Court should deny Defendants' Motion because there are disputed issues of material fact regarding whether the officers used excessive force when they kicked him in an area of his body that they knew could cause bodily injury.

Defendants correctly state the test to determine whether an officer can enjoy qualified immunity in *Saucier v. Katz*, 533 U.S. 194, 121 S. Ct. 2151 (2001). The first question is whether the facts taken in light most favorable to the plaintiff show that the officer's conduct violated a constitutional right.  *Id*.  If the answer is "yes", then the next question is whether that right was clearly established at the time of the officer's conduct.  *Id*.  If the answer is "yes", then the officer is not entitled to qualified immunity.  *Id*.  In *Saucier*, the defendant officers were protecting the Vice-President of the United States by watching for protestors who could be potentially be dangerous.  *Id*.  When the officers saw the plaintiff begin to approach the area where the Vice-President was, they immediately drug him away and shoved or threw him inside

a nearby military van. 533 U.S. at 198. The Supreme Court held that, assuming a constitutional protected right was violated, the officers were entitled to qualified immunity because there was not a clearly established rule regarding the officers' powers and responsibilities on how to protect the Vice-President at that time. *Id*, at 208. "It cannot be said there was a clearly established rule that would prohibit using the force petitioner did to place respondent into the van to accomplish these objectives." *Id*, at 208-209.

Here, the officers clearly used excessive force when they seized Manuel Alvarez in violation of the Fourth Amendment. The first question is whether there was a violation of his constitutional rights on the facts alleged. The Supreme Court in *Graham v. Connor*, 490 U.S. 386, 109 S. Ct. 1865 (1989), held that the Fourth Amendment prohibits unreasonable seizures of the person, and the use of force is contrary to the Fourth Amendment if it is excessive under objective standards of reasonableness. *Graham*, 490 U.S. at 394-395.

In order to determine whether the use of force was excessive, courts must look at the facts of each case, including: (1) the severity of the crime at issue; (2) whether the suspect posed an immediate threat to the officers or others; and (3) whether the suspect was resisting arrest or attempting to evade arrest by flight. *Saucier*, 533 U.S. at 205.

In this case Office Wasson used excessive force in kicking Manuel Alvarez in the abdomen or groin area when: (1) the crime at issue was a battery or disturbing the peace, misdemeanors; (2) Manuel Alvarez was not exhibiting any physical or verbal threats to the officers; and (3) Manuel Alvarez was standing "frozen" and only took one step.

First, Officer Wasson and Officer Blew responded to a call about an altercation. The crime was not severe. They were not trying to protect the Vice-President. They were not dealing with a dangerous situation. Officer Wasson claims that he saw Manuel Alvarez hit

7

Jeremy Fleming over the head with a pipe. However, this testimony is contraverted by Manuel's testimony that he was not holding a pipe, but a piece of aluminum and that he did not remember hitting Jeremy over the head with anything. Officer Blew testified that he did not arrive at the scene until later; therefore he cannot substantiate Officer Wasson's testimony.

Second, Manuel Alvarez did not pose a threat to either officer at the time Officer Wasson kicked him. Officer Wasson, Officer Blew, and Manuel Alvarez testified that Officer Wasson tasered him more than once and that he dropped the piece of aluminum. Officer Wasson and Officer Blew both testified that Manuel did not respond to their commands to get on the ground after he was tasered multiple times. The officers admitted in their depositions that they knew that a person could appear "frozen" after they were tasered. Therefore, the officers knew that it was possible that the taser had affected Manuel and he was unable to move or was in shock. Furthermore, Manuel Alvarez was intoxicated. Officers encounter intoxicated people often in the course of their jobs and it is not unreasonable to assume that Officer Wasson could determine Manuel Alvarez's condition in light of the circumstances. When he did move, Manuel only took one step and as a result, Officer Wasson decided to kick him in the abdomen or groin area. Officer Blew stated that Manuel Alvarez did not say anything to Officer Wasson, nor did he make any physical movements that could be construed as threatening. Manuel Alvarez's hands were down at his sides when he moved.

Third, Manuel was not resisting or trying to evade arrest. He had been drinking, he had been hit in the head, and he had been tasered multiple times when he was asked to get on the ground. He did not respond to the officers' commands because of his physical condition. Officer Blew even testified that he could not determine whether Manuel was able to understand their commands. Even if the situation warranted the officers to use force in order to take Manuel

Alvarez to the ground, Officer Wasson should not have kicked him in the abdomen or groin area. The officers testified that they are trained to take someone to the ground by hitting them on a bone or in the peroneal nerve in order to minimize injury. They are instructed not to hit someone in a soft-tissue area, the head, or in the groin area and that is exactly what Officer Wasson did in this case. He could have tried to kick Manuel in the leg but he opted to kick him in the abdomen or groin area. Manuel was not using verbal or physical threats at the time he was kicked. Manuel had only taken one step with his hands at his sides, and it was unreasonable for Officer Wasson to kick him in the area that he did when he was trained to do otherwise.

Defendants cite *Brandon v. Village of Maywood*, 157 F.Supp.2d 917 (N.D. Ill. 2001), where the court stated that failure to comply with a verbal order can constitute resistance requiring the officer to use force to overcome the resistance. *Id*, at 930. However, in *Brandon* the suspect had not been clocked in the head with a beer bottle with a visible cut, was not intoxicated, and had not been tasered repeatedly. *Id*. The suspect simply refused to comply with the officer's commands and therefore they grabbed his arms and threw him to the ground. *Id*, at 929. Even if it was necessary for Officer Wasson to kick Manuel Alvarez, it was unreasonable for him to kick him in the abdomen or groin area.

The Defendants also cited *Lawrence v. Kenosha County*, 391 F.3d 837 (7th Cir. 2004) where the plaintiff attempted to evade arrest by driving away from the police officer after a traffic stop. However, in that case the suspect was actively trying to evade arrest and those circumstances are not present in our case.

In *Smith v. City of Chicago*, 242 F.3d 737 (7th Cir. 2001), officers were trying to pull over a suspect and he refused to pull over for 12 blocks. When the officer pulled the suspect over he pulled him out of the car, pinned his arms behind his back, slammed him against the car,

9

and handcuffed him. *Id*, at 744. Again, Manuel Alvarez was not actively trying to resist arrest but was merely stunned under the circumstances which Officer Wasson was trained to recognize. The only action Alvarez took was a step. However, Officer Wasson kicked Manuel in an area that could cause bodily injury and here it ruptured his bladder.

In the most recent case decided by the Seventh Circuit, *Abdullahi v. City of Madison*, No. 04-4114 (7th Cir. Sep. 12, 2005), the Court stated that in order to avoid summary judgment on an excessive use of force claim the plaintiff must identify the specific unreasonable conduct that caused his or her injuries and that it is insufficient to merely allege that the injury occurred while in police custody. Here, plaintiff was kicked in the abdomen or groin area which resulted in a ruptured bladder according to his physician. The unreasonable conduct at issue is the kick to Manuel Alvarez and the location of the kick. This is an issue of material fact that needs to be determined by a jury.

This case is similar to *Rudolph v. Jones*, No. 00 C 3570, 2002 WL 1941360 (N.D. Ill. Aug. 21, 2002) where an officer shot the plaintiff while he was climbing a fence while fleeing from the officer. The court stated that it could be objectionably reasonable to shoot a suspect if that person posed a threat to the safety of the officer or others, however, the plaintiff was fleeing and had his hands on the fence at the time that he was shot. Id, at *2. Therefore, it was a question for the jury to decide whether the officer used excessive force. *Id*, at *2. Similarly in this case, it is a question for the jury to decide whether the officer used excessive force when he kicked Manuel Alvarez when Alvarez did not pose a threat to the safety of the officers or others.

Moreover, Officer Wasson did not document that he kicked Manuel in his police report, nor was Manuel charged with battery. These facts raise questions as to the validity of the officers' testimony.

Therefore, Manuel Alvarez has presented sufficient evidence to raise an issue of material fact regarding whether Officer Wasson used excessive force when he kicked Manuel Alvarez in the abdomen or groin area.

The next step is to determine whether the right was clearly established at the time of Officer Wasson's actions. "If the officer's mistake as to what the law requires is reasonable" then the officer is entitled to qualified immunity. Id, at 205. "The question is what the officer reasonably understood his power and responsibilities to be, when he acted, under clearly established standards." *Id*, at 208. In *Saucier*, the Supreme Court looked at the facts of the case and stated "it cannot be said there was a clearly established rule that would prohibit using the force the petitioner did to place respondent into a van to accomplish these objectives." *Id*, 208-209. In *Rudolph,* the court stated if the officer thought that he could shoot a fleeing, non-threatening suspect then it was an unreasonable mistake and qualified immunity did not apply. *Id*, at *2. Here, the question is whether there was a clearly established rule that would prohibit kicking someone in the abdominal or groin area in order to take him to the ground when he did not pose a physical threat to the officer. The answer is clearly "yes". The officers testified that they are instructed to take someone to the ground using the least amount of force necessary. If that requires kicking someone, they are instructed to aim for a bone or the peroneal nerve. They are specifically instructed not to kick someone in the area that Officer Wasson kicked Manuel. These responsibilities were clearly established at the time Officer Wasson kicked Manuel. Therefore, the officers are not entitled to qualified immunity.

**II.     THE OFFICERS CONDUCT WAS WILLFUL AND WANTON AND THEREFORE NOT IMMUNE PURSUANT TO THE TORT IMMUNITY ACT.**

The officers are not immune from liability for the battery counts because the Tort

11

Immunity Act does not provide immunity for willful and wanton conduct. "Battery is an intentional tort." *Wagman v. Pratt*, 219 Ill.App.3d 883, 896, 162 Ill.Dec. 221, 232, 579 N.E.2d 1035, 1043 (5th Dist. 1991), *See also Duarte v. City of Chicago*, No. 90 C 181, 1990 WL 165302, at *4 (N.D.Ill. Oct. 25, 1990). In *Duarte*, the Defendants moved to dismiss a battery count pursuant to the Tort Immunity Act, which is the same argument that Defendants have presented here. *Id*, at *4. The Court agreed with the plaintiff that battery is by definition an intentional tort and stated that "willful and wanton conduct has been defined as conduct which is intentional or committed under circumstances exhibiting a reckless disregard for the safety of others…because the amended complaint necessarily alleges that the officers acted intentionally, it suffices to allege willful and wanton conduct." *Id*. Here, Plaintiff alleged in his Complaint that the Defendant committed a battery. (Complaint as Exhibit "G", p. 2). Officer Wasson testified that he intentionally kicked Manuel and he aimed for the abdomen or groin area. Furthermore, the target area of Officer Wasson's kick established that the placement of the kick showed a disregard for the plaintiff's safety because he had been trained not to kick a suspect in a soft-tissue area, the head, or groin area.

The facts in this case are not similar to *Smith* as the Defendants have alleged. In *Smith*, the officer's conduct did not cause an injury because all he did was pull the suspect out of the car, pull his arms behind his back, slam him up against the car, and handcuff him. *Smith*, 242 F.3d at 744. Here, Officer Wasson intended to kick Manuel in an area that he knew could cause bodily injury, contrary to his training.

### III.     CITY'S MOTION IS NOT AT ISSUE.

Plaintiff has agreed to dismiss the City from this case, therefore this issue is moot.

### (d)  CONCLUSION

This Court should deny the Defendants' Motion for Summary Judgment. There is a genuine issue of material fact at to whether it was reasonable for the officer to kick Manuel Alvarez in the abdomen or groin area when he did not pose a threat to the officer or others. Further, the Tort Immunity Act does not provide immunity for an intentional tort such as the battery alleged in this complaint.

        s/ Jamie L. Bas
        Jamie L. Bas Bar Number: 6277169
        Attorney for Plaintiff
        George Ripplinger and Associates
        2215 W. Main Street
        Belleville, IL 62226-6692
        (618) 234-2440
        FAX: (618) 234-6728
        jamie@ripplingerlaw.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 16th day of September, 2005, the foregoing was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon the following:

John F. Martin
Meachum & Martin
110 N. Vermilion
Danville, IL 61832

        s/ Jamie L. Bas
        Jamie L. Bas Bar Number: 6277169
        Attorney for Plaintiff
        George Ripplinger and Associates
        2215 W. Main Street
        Belleville, IL 62226-6692
        (618) 234-2440
        FAX: (618) 234-6728
        jamie@ripplingerlaw.com