E-FILED
Friday, 16 September, 2005   10:48:18 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| MANUEL ALVAREZ, SR., )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>CITY OF DANVILLE, )<br>OFFICER TROY WASSON, badge )<br>number 347, individually )<br>and as an employee of the Police )<br>Department of the City of Danville, )<br>and JOSEPH BLEW, individually )<br>and as an employee of the Police )<br>Department of the City of Danville, )<br>)<br>)<br>Defendants. ) | CASE NO. 04-2162 |

AFFIDAVIT OF MANUEL ALVAREZ

COMES NOW, Manuel Alvarez, and upon oath and personal knowledge states:

1. My name is Manuel Alvarez.

2. In the early morning hours of September 13, 2003, I got into a disagreement with Jeremy Fleming after we had each drank approximately twelve beers.


PLAINTIFF'S EXHIBIT D

3. Jeremy Fleming and I got into a physical altercation, in which he hit me over the head with a glass beer bottle which cut my face.

4. As a result of the altercation, Officer Troy Wasson and Officer Joseph Blew arrived on the scene.

5. At the time the officers arrived at the scene, I was holding a piece of aluminum from a kick panel of an aluminum door which was about 3 inches wide.

6. I do not remember striking Jeremy Fleming with this piece of aluminum.

7. The officers told me to drop the piece of aluminum, but I was intoxicated and did not comply with their request.

8. As a result, Officer Troy Wasson, tasered me more than once.

9. After I was tasered, I dropped the piece of aluminum.

10. The officers asked me to drop to the ground, but I did not comply with their commands because I was frozen from the taser gun and intoxicated.

11. I did not try to approach either officer in a threatening manner.

12. Officer Troy Wasson kicked me in my abdomen causing my bladder to rupture.

_Manuel Alvarez_
Manuel Alvarez

Subscribed and sworn to before me this 14 day of September 2005.

_Amanda Isom_
NOTARY PUBLIC

OFFICIAL SEAL
AMANDA ISOM
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES: 11-15-06

```
MANUEL ALVAREZ,              )
                             )
        Plaintiff,           )
                             )
   vs.                       )   No. 04-2162
                             )
CITY OF DANVILLE, et al.,    )
                             )
        Defendants.          )
```

DISCOVERY DEPOSITION

Deposition of JANE McFADDEN, taken on behalf of the Plaintiff at the Danville Public Safety Building, on August 25, 2005.

APPEARANCES:

    GEORGE RIPPLINGER & ASSOCIATES
    2215 W. Main
    Belleville, Illinois  62226
    By: Ms. Patricia Zimmer, Attorney
    Appearing for the Plaintiff

    MEACHUM & MARTIN
    110 N. Vermilion Street
    Danville, Illinois  61832
    By: Mr. John Martin, Attorney
    Appearing for the City of Danville

Deposition taken pursuant to the discovery provisions of the Illinois Code of Civil Procedure and the Rules of the Court promulgated pursuant thereto.
    CSR License No. 84-004343

ORIGINAL


PLAINTIFF'S EXHIBIT E

Page 22

1  it. It doesn't mean that it didn't happen.
2      I know he told me at the time that he had
3  come at him so I assume he did something to stop
4  him from battering him but I didn't know what he
5  did.
6      Q. I think it has been established that it
7  happened. Watson has told us.
8      A. I am sure but I didn't remember it and I
9  didn't witness it.
10     Q. I am trying to determine why it would not
11 be in Watson's report?
12         MR. MARTIN: The report says he took him
13 to the ground.
14 BY MS. ZIMMER:
15     Q. Yes.
16     A. We don't put how many times you hit
17 somebody but whatever means necessary to affect a
18 lawful arrest if you are going to fight somebody,
19 you are fighting them.
20         You know, I mean I don't put down I
21 struck the subject three times with my fist. You
22 know, you are in the middle of a fight.
23         You don't remember how many times that
24 you struck him with a fist. You just know you are

Page 23

1  taking him to the ground because he is refusing
2  your orders and you have the legal right to do
3  that.
4          So any means necessary to affect a lawful
5  arrest so I mean if you kick somebody or you push
6  somebody, you know, if you don't know that, if you
7  don't know if you cause injury and we didn't call
8  the ambulance for any injury that he had sustained
9  from Officer Watson to my knowledge it probably
10 wouldn't be in there.
11         It would just be that he was resisting
12 and that they took him to the ground. If they took
13 him to the ground, they had to do something to take
14 him to the ground.
15         They would have to put their hands on him
16 and you can't take somebody to the ground without
17 putting your hands on them.
18     Q. You yourself I am sure have been trained
19 as to the methods used to take somebody down or if
20 someone appears to be resisting or coming towards
21 you how to deal with that situation?
22     A. Um-hum.
23     Q. And a kick would be something that could
24 be used to deal with that situation?

Page 24

1      A. Certainly.
2      Q. When you choose to employ a kick on a
3  subject in those circumstances, are there any -- is
4  there any particular means that you should use in
5  employing that kick?
6      A. Well, normally any kind of strike would
7  be to like the peroneal nerve to the leg so that
8  person would lose their balance or you would
9  temporarily stun them so you could take them to the
10 ground effectively without -- you don't want to
11 cause any injury to, you know, to yourself or to
12 them basically.
13         And the tazer is before you even put your
14 hands on someone we deploy a tazer and in an arrest
15 situation when the person is noncompliant.
16     Q. Would there be anything in particular
17 that you would want to avoid so as to minimize the
18 risk of injury to the subject?
19     A. Well, normally you don't want to kick
20 anybody in the head. You try not to strike them in
21 the head area and like with the tazer, you know,
22 soft tissue area, groin and head is basically the
23 two places you would like to avoid.
24         Sometimes that doesn't happen depending

Page 25

1  on how combative the person is moving. It is kind
2  of difficult to plan where you are going to strike
3  them because they are moving at the time.
4          It is not like striking someone standing
5  completely still and you can pick the spot. But
6  normally you would stay away from the head and
7  groin area if you could.
8          And on a woman I would assume the chest
9  area. Being a woman myself I would like to put
10 that in there.
11         MS. ZIMMER: Those are all the questions
12 I have.
13         MR. MARTIN: I have no questions.
14 Reserve signature.

MIGUEL OCHOA

Page 1

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

MANUEL ALVAREZ, SR.,            )
                                )
    Plaintiff,                  )
                                )
-vs-                            ) No.  04-2162
                                )
CITY OF DANVILLE, OFFICER TROY  )
WASSON, badge number 347,       )
individually and as an employee )
of the Police Department of     )
the City of Danville, and       )
JOSEPH BLEW, individually and   )
as an employee of the Police    )
Department of the City of       )
Danville,                       )
                                )
    Defendant.                  )

DEPOSITION

   The deposition of MIGUEL R. OCHOA, MD, a citizen
of the State of Illinois, a witness of lawful age;
produced, sworn, and examined upon his corporeal
oath, at the offices of Dr. Ochoa, 701 West
Fairchild, Danville, Illinois, on the 18th day of
August, 2005, before Amy L. Prillaman, CSR, License
No. 084-003275, in and for the County of Vermilion
and State of Illinois; as a witness in a certain suit
and matter now pending and undetermined in the United
States District Court for the Central District of
Illinois.

AREA WIDE REPORTING SERVICE



PLAINTIFF'S EXHIBIT F

03148d11-b549-414a-bdd4-0246d66bd193

1    A.    Yeah, took him to surgery for the abdomen.
2  The radiologist was saying that he had ascites.  And
3  then we proved that it was not ascitic fluid, it was
4  urine when I opened the abdomen.  And according --
5  you know, relatively normal liver and liquid there,
6  you have to know it's not ascitis, it's something
7  else.
8         I checked in the bladder and the bladder
9  was ruptured.  Repair it, suction all the urine, wash
10 the abdomen and close the belly.  I have to check
11 everything in there, you have to check the intestine,
12 you have to check the liver, you have to check the
13 spleen, everything, because you can miss it very
14 easily.  And --
15    Q.    So you did repair the bladder then?
16    A.    We don't see too many ruptured bladders, we
17 usually see ruptured bowel and -- because it's more
18 fragile than the bladder.  But it depends if the kick
19 was right on the bladder, that's the one that
20 ruptured, but evidently he was kicked in several
21 places than just the abdomen.  That's what the
22 history says here.
23    Q.    Right.  So you did repair the bladder then?
24    A.    I repaired the bladder and then that was

1   Q. "As I was approaching Mr. Alvarez at that
2   point I recall that he was facing directly at me and
3   he took one step towards me. At that point I was
4   within three to five feet and at that point I had my
5   taser in one hand, my left hand was empty and I used
6   a front kick and kicked Mr. Alvarez in the pelvis
7   area."
8       Doctor, based on that, do you have an
9   opinion within a reasonable degree of medical
10  certainty as to whether or not that kick as described
11  by Officer Wasson would have been sufficient to have
12  caused the ruptured bladder that you found and
13  repaired in Manuel Alvarez?
14      MR. MARTIN: Objection, lack of foundation.
15  A.  Yeah, it was.
16  Q.  That is your opinion, that it was
17  sufficient?
18  A.  Yeah.
19  Q.  Doctor, was the care and treatment that you
20  provided to Manuel reasonable and necessary for the
21  injury that he had?
22  A.  Yeah.
23  Q.  Was the five day hospitalization reasonable
24  and necessary?