**E-FILED**
Wednesday, 16 November, 2005  02:54:13 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| MANUEL ALVAREZ, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | 04-2162 |
| v. | ) | |
| | ) | |
| CITY OF DANVILLE,[1] OFFICER T. | ) | |
| WASSON, badge number 347, | ) | |
| individually and as employee of the | ) | |
| Police Department of the City of | ) | |
| Danville, and OFFICER BLEW, | ) | |
| individually and as an employee of the | ) | |
| Police Department of the City of Danville, | ) | |
| | ) | |
| Defendants. | ) | |

ORDER

On September 12, 2003, at about 6:00 p.m., Jeremy Fleming ("Fleming") visited the plaintiff, Manuel Alvarez ("Alvarez"), at Alvarez's home in Danville, Illinois.[2]   The two men left and got a twelve-pack of beer, returned to the home, drank the beer, and returned to the liquor store to purchase another twelve-pack to drink.  Each man consumed twelve beers.

After midnight, Alvarez and Fleming began to argue, although Alvarez does not remember what started the fight or  how long they argued before the argument turned physical.[3] Alvarez recalls that Fleming hit him in the face with a beer bottle, and the next thing he remembers is standing over Fleming with a piece of aluminum in his hand.

_____

[1] The City of Danville was dismissed as a defendant on September 27, 2005.

[2] Alvarez states that Fleming may be his son, although paternity has never been proven.

[3] The nature of the physical argument is unclear.  Hospital notes from Alvarez's second hospital visit state that Alvarez told the hospital staff that he'd been involved in a fight a few days earlier during which he was struck in the face and other parts of his body.  When Alvarez was deposed, he was asked about the hospital notes and could not recall giving those statements to the hospital staff.  The defendants have not submitted the hospital notes to the court.  Alvarez was also asked about the police report, which apparently reflects that Fleming's girlfriend, Tiffany Dill, said the fight started as a pushing match, and at one point Alvarez struck Fleming in the face several times with a closed fist.  However, neither the deposition of Tiffany Dill nor the police report have been submitted to the court.

Early in the morning of September 13, 2003, the Danville Police Department received a report of a fight in progress at the Alvarez home.  Danville police officer Troy Wasson ("Wasson") responded to the call, and police officer Joseph Blew ("Blew") provided backup, arriving less than a minute after Wasson arrived on the scene.

Wasson states that when he arrived, he saw Alvarez holding a pipe in his hand,[4] and then he saw Alvarez strike Fleming's head with the pipe.[5]  Fleming fell to the ground, and Wasson quickly approached Alvarez.  Wasson yelled at Alvarez, at least twice, to drop the pipe. Alvarez did not comply, so Wasson activated his taser and shot two darts[6] at Alvarez.  Wasson continued to yell at Alvarez to drop the pipe and get down on the ground. The taser had no effect on Alvarez, so Wasson reactivated the electricity to the two darts.  At that point, Alvarez let go of the pipe, but he did not drop to the ground as ordered.  Wasson concluded that the two taser activations had little or no effect on Alvarez, so Wasson approached Alvarez to take him into custody.  At that point, Alvarez took a step toward Wasson, and Wasson used a front kick to strike Alvarez in the pelvic area.  Alvarez went down to his knees and then rolled over onto his stomach with both of his hands underneath his stomach or chest area.

Blew states that when he arrived at the Alvarez residence, he saw Fleming lying on the ground.  Blew approached Fleming, and heard Wasson yell to Alvarez to drop the pipe and get down on the ground.  At that point, Blew noticed that Wasson had used a taser on Alvarez.  Blew noticed that the taser had no apparent effect on Alvarez.  Blew and Wasson yelled at Alvarez to get down on the ground.  Blew saw Alvarez take a step toward Wasson and noticed that Alvarez's fists were clenched.  Wasson kicked Alvarez, and Alvarez fell to the ground.  The two officers struggled with Alvarez to force his arms out from under him so they could handcuff him.

Alvarez tells a different story.  He states that when he was shot by the taser darts, he felt the shock, collapsed to the ground, and dropped what he was holding.  As he fell to the ground, he felt the officer's knee in his gut.  Once on the ground, he was handcuffed.

After Alvarez was brought to his feet, the officers noticed that he was extremely intoxicated and that he had a severe cut on the left side of his face.  The officers brought him to the hospital where he received treatment for the cut.  Alvarez was released from the hospital, but the following day he returned, complaining of abdominal problems.  He was diagnosed with a ruptured bladder requiring emergency surgery.

---

[4] Wasson described the pipe as a round cylinder, three to four feet long, like an aluminum tent pole.  Alvarez describes the piece of metal as "a bottom kick panel off an aluminum door."

[5] Alvarez "can't remember" if he hit Fleming. He recalls seeing Fleming on the ground, and he recalls holding the metal piece in his hand while standing over Fleming.  Alvarez can't recall how Fleming got onto the ground.

[6] Alvarez states he was hit by four or more taser darts.

ANALYSIS

Summary judgment is granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is proper when "a party . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case[.]" *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court must consider the evidence in the light most favorable to the party opposing summary judgment. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The burden of establishing that no genuine issue of material fact exists rests with the movant. *Jakubiec v. Cities Serv. Co.*, 844 F.2d 470, 473 (7th Cir. 1988). Once the movant has done so, the party opposing the motion bears the burden to respond, not simply by resting on the pleadings, but by affirmatively demonstrating that there is a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 322-324.

In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Summary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859 (7th Cir. 2005). "If [the non-movant] does not [meet his burden], summary judgment, if appropriate, shall be entered against [the non-movant]." *See* Fed. R. Civ. P. 56(e).

Alvarez brings his action pursuant to 42 U.S.C. § 1983. He also brings a state law claim of battery. The defendants argue that they are entitled to summary judgment because (1) they are entitled to qualified immunity on the Section 1983 claim; and (2) Alvarez has not shown the defendants' conduct was willful and wanton as required under the Illinois Tort Immunity Act.

I. Excessive force

"In order to survive summary judgment on grounds of qualified immunity, a plaintiff must (1) allege violation of a valid legal right and (2) demonstrate that 'it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.'" *Abdullahi v. City of Madison*, 423 F.3d 763, 775 (7th Cir. 2005) (*quoting Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

During the course of an arrest or other "seizure" of a free citizen, the force used to detain the individual must be reasonable in a Fourth Amendment context. *Graham v. Connor*, 490 U.S. 386, 395 (1989); *Lawrence v. Kenosha County,* 391 F.3d 837, 843 (7th Cir. 2004).

> [The determination of reasonableness] involves "a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and quotation marks omitted). Not surprisingly, this analysis is "not

capable of precise definition or mechanical application" but "requires careful
attention to the facts and circumstances of each particular case, including the
severity of the crime at issue, whether the suspect poses an immediate threat to
the safety of the officers or others, and whether he is actively resisting arrest or
attempting to evade arrest by flight." *Graham*, 490 U.S. at 396 (citations and
quotation marks omitted). *See also Tennessee v. Garner,* 471 U.S. 1, 8-9 (1985)
(the relevant question is "whether the totality of the circumstances justifie[s] a
particular sort of ... seizure"). Additionally, "the 'reasonableness' of a particular
use of force must be judged from the perspective of a reasonable officer on the
scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.
In excessive force claims, "[t]he calculus of reasonableness must embody
allowance for the fact that police officers are often forced to make split-second
judgments--in circumstances that are tense, uncertain, and rapidly evolving--about
the amount of force that is necessary in a particular situation." *Graham*, 490 U.S.
at 396-97. Finally, "[a]s in other Fourth Amendment contexts, the
'reasonableness' inquiry in an excessive force case is an objective one: the
question is whether the officers' actions are 'objectively reasonable' in light of the
facts and circumstances confronting them, without regard to their underlying
intent or motivation." *Graham*, 490 U.S. at 397.

*Abdullahi*, 423 F.3d at 768.

At his deposition, Alvarez testified as follows:

Q. So you were hit by the TASER, and did you feel the shock?

A. I lost total – I just collapsed to the ground first time and dropped what I was holding.

Q. Do you remember struggling with the officers?

A. No.

Q. Do you remember being handcuffed?

A. Yes.

Q. After you were handcuffed, what happened?

A. After I was TASER'd, I was taken to the ground. At the same time I was taken to the
ground, I can't recall what officer, but he rammed his knee into my gut as I was being taken
down. Then I was cuffed.

Q. Okay. So you're indicating that before you were on the ground, they were trying to
get you to the ground, you were hit by an officer's knee; is that right?

2:04-cv-02162-HAB-DGB  # 25  Page 5 of 7

A.  As I was being taken down, his knee went into my gut.[7]

If Alvarez is to be believed,[8] he presented no threat to officers when he was kicked.  He did not resist arrest or attempt to flee.[9]  Once he received the taser shocks, he dropped the piece of aluminum and fell to the ground.  The officers present a different story – Alvarez did not comply with their orders to drop to the ground, and although he did drop the piece of aluminum, he took a step toward them with his fists clenched.  At that point, Wasson kicked Alvarez to bring him to the ground.  The encounter happened in the dark of night, and the officers state that they first became aware that Alvarez was intoxicated after they had placed him in handcuffs.  This dispute of material fact must be resolved by a jury. Given the rapid sequence of events,[10] the court cannot say as a matter of law that the officers acted reasonably when they kicked Alvarez to the ground.

Because the material facts are in dispute, the court cannot determine that "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Abdullahi*, 423 F.3d at 775.  Accordingly, the court denies the motion for summary judgment as to Wasson.  Alvarez repeatedly contends that the excessive force in this case stems from the kick, and not from handcuffing or any other conduct by Blew.[11]  Therefore, the motion for

---

[7] Alvarez Dep. pp. 30-31.  Alvarez also submits an affidavit stating that when he was told to drop the piece of aluminum, he did not comply because he was intoxicated.  As a result, he was taser'd more than once.  After he was taser'd, he dropped the piece of aluminum, but he did not comply with their commands because was intoxicated and was "frozen" from the taser.  He did not try to approach either officer in a threatening manner.  Alvarez Aff., p. 2.  When deposed, the officers agreed that an individual may appear "frozen" after receiving a taser shock, but ideally the effect is to stop the individual's aggressive behavior and bring him to the ground.  Blew Dep. p. 36; Wasson Dep. pp. 57-58.

[8] At this stage, the court must view the facts in the light most favorable to Alvarez.  The court need not speculate as to how the jury will weigh the effect of Alvarez's admitted intoxication on his recollection of the events.

[9] It is not clear when the officers determined the extent of Fleming's injuries, so the court cannot say whether the officers knew they were dealing with a misdemeanor battery as Alvarez claims.

[10] It all happened in "a matter of seconds."  Blew Dep. pp. 18, 21.

[11]  In the complaint, Alvarez alleges that Blew "did nothing to prevent" Wasson's conduct.  However, this argument is apparently abandoned on summary judgment – and rightly so, because it is uncontested that there was little time for Blew to prevent Wasson's kick.  In order to impose Section 1983 liability for failing to prevent the unlawful conduct of another, the plaintiff must show, among other things, that the officer had a "realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994).

summary judgment is granted in favor of Blew.

## II.  Battery

Under the Local Governmental and Governmental Employees Tort Immunity Act, 745 Ill. Comp. Stat. 10/1-101 et seq. (the "Act"), municipal employees are immune from tort liability in certain situations.  However, "public employees are liable for injuries caused by their 'acts or omissions in the execution or enforcement of any law' if their conduct was willful and wanton." 745 Ill. Comp. Stat. 10/2-202; *Holder v. Ivanjack*, 39 F. Supp. 2d 965, 973 (N.D. Ill 1999).

To prevail at trial, Alvarez must prove that (1) the defendants were executing or enforcing the law and (2) their conduct was willful and wanton.  *Holder*, 39 F. Supp. 2d at 973. Willful and wanton conduct is defined as "a course of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others." 745 Ill. Comp. Stat. 10/1-210. Thus, the conduct does not have to be an intentional act; "it may be an act committed under circumstances exhibiting a reckless disregard for the safety of others." *Carter v. Chicago Police Officers*, 165 F.3d 1071, 1081 (7th Cir. 1998) (*citing Medina v. City of Chicago*, 606 N.E.2d 490, 496 (Ill. App. Ct.1992)). Conduct is willful and wanton when it is involves more than inadvertence, incompetence or unskillfulness; it must be in disregard of "known or plainly observable dangerous conditions . . .  that will naturally and probably result in injury to another." *Carter*, 165 F.3d at 1081.

In this case, Alvarez argues that Wasson intentionally kicked him in the abdomen or groin area despite Wasson's training to avoid kicking a suspect in the soft-tissue area, the head, or the groin.  Sergeant Jane McFadden and Blew state that they are trained to kick at a bone or the peroneal nerve in the leg in order to diminish the chance of injury.  Wasson stated that he tried to kick Alvarez in the pelvic area in order to push him backwards.   Wasson may have aimed for a bone in the pelvis or upper thigh instead of the soft-tissue area of the pelvis. Moreover, the facts alleged by Alvarez and Wasson are not necessarily inconsistent: Wasson may have aimed his kick to a bone in the pelvis or upper thigh just as Alvarez began to fall, with the unintended result that Alvarez was kicked in the abdomen.

The court cannot decide this issue as a matter of law.  The trier of fact must hear the evidence and draw reasonable inferences based on the evidence.  Accordingly, summary judgment is denied as to the battery claim.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment [#20] is granted in part and denied in part.  The motion is denied as to Wasson.  The motion is granted as to Blew; he is

dismissed from this action.  Wasson is the sole defendant remaining in this case.  The claims against Wasson will proceed to trial.  A final pretrial conference is scheduled for Monday, December 5, 2005 at 1:30 p.m. by personal appearance before the court sitting in Urbana, Illinois.  The parties shall bring to the pretrial conference a proposed pretrial order as specified in this court's Local Rules.  Jury selection and jury trial are scheduled to begin on December 12, 2005 at 9:00 a.m.

Entered this 16th day of November, 2005.

**s\Harold A. Baker**

HAROLD A. BAKER
UNITED STATES DISTRICT JUDGE